IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO. 5:11CV27-RLV

| | |
|---|---|
| A.S., by and through his parents, LEONEL S. and JENNIFER S., Plaintiff, vs. CATAWBA COUNTY BOARD OF EDUCATION, Defendant. | Memorandum and Opinion |

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, and all related memoranda and exhibits. (Documents ##14,15, 19-21)

## I. Background & Procedural History

Plaintiff A.S. is a four-year-old minor child that suffers from developmental disabilities. (Compl. ¶¶1,11) More specifically, A.S. is diagnosed with "static encephalopathy" due to "fetal alcohol exposure, Fetal Alcohol Spectrum Disorder ("FASD"), mild developmental delay, sensory integration difficulties, sleep apnea, insomnia, obsessive-compulsive traits, and some features of pervasive developmental disorder." (Compl. ¶11) A.S.'s disabilities manifest as "aggressive and self-injurious behaviors, hyperactivity, lack of impulse control, elopement, and other problematic and dangerous conduct." (Compl. ¶2)

Since September 2009, A.S. has been working with an individually trained service animal ("Chatham") to help him redirect some of the behaviors described above. (Compl. ¶2; Walker

1

Decl. ¶2) Chatham is registered (Service Animal #296) in the State of North Carolina Service Animal registry maintained by the Department of Health and Human Services. *See* N.C. GEN. STAT. §168-4.3 (2010). (Compl. ¶12) After eleven (11) months of training 4 to 6 hours per day, Chatham was trained to provide Deep Pressure Therapy ("DPT") through actual physical contact with A.S. as well as other techniques for redirection.[1] (Denyer Decl. ¶5a; Walker Decl. ¶¶4,7)

A.S. currently resides in Vale, North Carolina, with his adoptive parents. (Compl. ¶10) During the relevant time period, A.S. was in attendance at the pre-kindergarten program at Mountain View Elementary School in Catawba County receiving special education services. (Compl. ¶¶3, 10) A.S.'s eligibility for special education services was determined in February 2010, at which time A.S.'s work with Chatham was underway and brought to the school's attention. (Jennifer S. Decl. ¶11) The special education services for A.S. are defined within an Individualized Education Plan (or "IEP") developed by a group of school personnel, professionals and A.S.'s parents ("the IEP Team").

To Plaintiffs' disappointment, after multiple inquiries, Plaintiffs were notified approximately six (6) days prior to the beginning of the 2010-11 academic year that A.S. would not be allowed to have Chatham present with him during the school day. (Jennifer S. Decl. ¶13) Upon the parents' request, an accommodation to permit A.S.'s full-time use of Chatham at school, was explored through Section 504 of the Rehabilitation Act of 1973.[2] (Compl. ¶29;

---

[1] Reportedly, A.S. is "generally aversive to human touch," so Chatham is able to calm and redirect A.S. in situations where his parents or other adults may not be able to intervene as easily. (Schnug Decl. ¶7)

[2] **Section 504 of The Rehabilitation Act of 1973** reads in pertinent part:

No otherwise qualified individual with a disability in the United States ... shall,

Def.'s Exh. 1) During the October 15, 2010 Section 504 meeting, Catawba County BOE formally rejected the parents' request for accommodation. (Compl. ¶31) Catawba County BOE apparently questioned whether Chatham was in fact a service animal.[3] (Smith Aff. ¶12; Aldridge Aff. ¶12)

A.S. next requested a modified schedule to "mitigate the ongoing harmful effects of his separation from his service animal." (Compl. ¶34) The modified schedule accommodation was considered during a meeting held on November 10, 2010. (Compl. ¶34) From November 2010 through the end of the school year, A.S.'s school day was "unofficially" modified to permit pick-up between 12 noon and 12:30 pm given that A.S. is not subject to state truancy laws. (Compl. ¶34; Jennifer S. Decl. ¶¶17,18) The shorter school day allowed A.S. to nap at home with Chatham and did not require him to miss instructional time. (Compl. ¶35; Jennifer S. Decl. ¶17)

---

> solely by reason of ... disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....
>
> \*\*\*
>
> [T]he term "program or activity means all of the operations of – a local educational agency ..., system of vocational education, or other school system.

29 U.S.C. §794(a) and (b)(B). "Section 504 has been interpreted to require federal grantees to modify or excuse non-essential requirements which impede a disabled person from participating in the grantee's federally funded program. It has been held that a grantee's refusal to make ***"reasonable accommodations"*** for the disabled person can only be explained as "unreasonable or discriminatory."" Sullivan v. Vallejo City Unified School District, 731 F.Supp. 947, 950 (E.D.Ca. 1990) (*emphasis provided*) (*citing* Southeastern Community College v. Davis, 442 U.S. 397, 413 (1979)).

[3] According to Plaintiffs, Catawba County BOE never disclosed to Plaintiffs the information it relied upon in denying the request and similarly never inquired of Chatham's trainer concerning purported questions concerning certification.

3

Despite Plaintiffs' requests, the most recent IEP does not contemplate Chatham's use during the school day as Catawba County BOE, through the IEP Team, has determined that use of the service dog is unnecessary. According to educators providing direct services to A.S., he "made a nice adjustment," is able to access the programs, facilities and services of his school to the same extent that the school's nondisabled students do, and does not need the service dog in order to benefit from the special education services being provided. (Def.'s Exhs. A ¶¶9, 17; Exh. C ¶14) Reportedly, Catawba County BOE requested an up-to-date neurological evaluation to further consider A.S.'s request to have Chatham accompany him to school. Plaintiffs have not challenged A.S.'s IEP, as such, or requested an impartial due process hearing pursuant to North Carolina procedure. (Def.'s Exh. A) The school system's unfavorable decision prompted this litigation.

Plaintiff commenced this civil action with the filing of the Complaint on March 14, 2011, along with a Motion for Preliminary Injunction. (Documents ##1, 3, 4) The Complaint alleges unlawful discrimination based upon disability as prohibited by Section 504 of the Rehabilitation Act of 1973 ("Section 504", 29 U.S.C. §794(a), and Title II of the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. §12132, *et seq.*, and their regulations. Plaintiff's Complaint seeks (i) a declaratory judgment finding that Catawba County BOE's actions violate Section 504 and the ADA, (ii) injunctive relief directing Catawba County BOE to accommodate A.S. and permit Chatham to assist A.S. at school, (iii) monetary damages to compensate A.S. for service animal training costs incurred to restore and maintain the service animal's training during the period of separation, including the cost to retrain and prepare the service animal to work with A.S. in the classroom, and (iv) Plaintiff's reasonable costs and attorneys' fees. (Compl. ¶¶4,8)

Defendant obtained an extension of time to Answer or otherwise respond to both the Complaint and Plaintiff's Motion for Preliminary Injunction. (Documents ##8, 9) On April 20, 2011, Defendant responded to Plaintiff's Motion for Preliminary Injunction. (Document #12) Within its opposition brief, Defendant raised the issue of exhaustion and the absence of subject matter jurisdiction. On May 3, 2011, Defendant formally moved to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction based upon failure to exhaust administrative remedies. (Documents ##14, 15)

A hearing was scheduled for May 12, 2011 to hear from the parties concerning Plaintiff's Motion for Preliminary Injunction and Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. At the outset, Plaintiff withdrew the former motion, and the Court proceeded to hear evidence and argument from both sides on the Motion to Dismiss. Plaintiff requested time to respond in writing to Defendant's motion before the Court decided the matter. Supplemental briefing was requested and allowed. (Documents ##19-21) Defendant's Motion to Dismiss is now ripe for decision.

## II. Standard of Review

A district court should dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege facts upon which subject matter jurisdiction can be based or if the jurisdictional allegations in the complaint are not true. *See* Kerns v. United States, 585 F.3d 187, 192 (4th Cir.2009) (*citing* Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982)) (describing nature of defense challenges to subject matter jurisdiction and appropriate standards). In ruling on a Rule 12(b)(1) motion where the jurisdictional factual predicate is challenged, "a[] trial court may then go beyond the allegations of the complaint and *in an*

5

*evidentiary hearing* determine if there are facts to support the jurisdictional allegations...." Id. (*italics in original*); Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768-69 (4th Cir. 1991) (*citations omitted*). "In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." Id.

### III. Discussion

Given the state of the evidence, the Court finds no merit in Plaintiff's contention that IDEA is inapposite. *See* 20 U.S.C. § 1400, *et seq*. (2006). Plaintiff contends that the gravamen of the Complaint is discrimination as opposed to an educational challenge of the IEP under IDEA. Defendant characterizes the Complaint, viewed as a whole, as an IDEA matter merely disguised as a discrimination claim and, therefore, subject to IDEA's exhaustion provision. *See* 20 U.S.C. §1415(l). Although Plaintiff's Complaint is not expressly framed as a cause of action pursuant to the IDEA, the Court finds instructive the case of Cave v. East Meadow Union Free School District, where a similar fact pattern emerges. *See* 514 F.3d 240, 248 (2nd Cir.2008). The analysis set forth in Cave, while not controlling, is pertinent here, and bears the same result. As explained herein, the Court construes Plaintiff's action as necessarily falling within the IDEA and its exhaustion prerequisite.

IDEA is not an exclusive remedy for an aggrieved student with a disability.[4] Rather,

---

[4] The IDEA is intended to benefit "child[ren] with a disability," meaning children:

> (i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (hereinafter referred to as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and

6

pursuant to IDEA's statutory scheme, other federal causes of action may be appropriate:

> Nothing in this chapter [Education of Individuals with Disabilities] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. §12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. §791 et seq.], or other Federal laws protecting the rights of children with disabilities, ***except that before the filing of a civil action and under such laws seeking relief that is also available under this subchapter [Assistance for Education of All Children with Disabilities], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter***.

20 U.S.C. § 1415(l) (*emphasis added*). In other words, the IDEA contemplates that independent or complementary federal causes of action may be brought pursuant to the ADA or the Rehabilitation Act.[5] Significantly, IDEA expressly states that IDEA's procedures under subsections (f) and (g) "*shall be exhausted"* as if the action were originally brought under IDEA.[6]

Generally, the "[e]xhaustion of administrative remedies serves two main purposes: first, it

---

(ii) who, by reason thereof, need[ ] special education and related services.

20 U.S.C. § 1401(3)(A).

MM v. School District of Greenville County, 303 F.3d 523, 526 n. 3 (4th Cir.2002).

[5] The **Americans With Disabilities Act of 1990** provides that:

"no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services ... of a public entity, or be subject to discrimination by any such entity."

42 U.S.C. § 12132 (2006).

[6] Subsection (f) provides opportunity for an impartial due process hearing to be conducted by the State or local educational agency, as determined by State law or by the State educational agency. *See* 20 U.S.C. § 1415(f)(1)(A). Subsection (g) permits an appeal to a State educational agency for an independent impartial review where the impartial due process hearing is conducted at the local educational agency level. *See* 20 U.S.C. § 1415(g).

protects administrative agency authority, in that it gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures, and, second, it promotes efficiency, in that claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Woodford v. Ngo, 548 U.S. 81 (2006) (considering administrative exhaustion in Section 1983 and Prisoner Litigation Reform Act context); S.B. v. Haverford Township School District, 2009 WL 1657391, *2 (June 11, 2009 E.D.Pa.) ("The IDEA imposes an exhaustion requirement to afford school districts an opportunity to correct their own mistakes.") Accordingly, under 20 U.S.C. § 1415(l), if a plaintiff fails to exhaust administrative remedies under IDEA, a case brought under the ADA or Section 504 that is also cognizable under the IDEA is subject to dismissal.[7]

The Fourth Circuit has identified certain possible exceptions to the exhaustion prerequisite.[8] *See, e.g.*, MM v. School District of Greenville County, 303 F.3d 523, 535-

---

[7] Plaintiff suggests that exhaustion under the IDEA is a "mere claims processing rule" not determinative of subject matter jurisdiction. (Pl.'s Resp. 16-17) Plaintiff is correct that the U.S. Supreme Court has begun to question, in a number of different contexts, whether certain procedural limitations are, in fact, jurisdictional. *See e.g.*, Bowles v. Russell, 551 U.S. 205 (2007); Reed Elsevier, Inc. v. Muchnick, 130 S.Ct. 1237 (2010); Henderson v. Shinseki, 131 S.Ct. 1197 (2011). However, as a practical matter, if exhaustion is found to be required but not accomplished, the manner in which the legal question is characterized makes no difference in that any unexhausted issue would not be properly before this Court for judicial review. *See e.g.*, MM v. School District of Greenville County, 303 F.3d at 536 ("The failure of the Parents to exhaust their administrative remedies for the 1998-99 and 1999-2000 school years deprives us of subject matter jurisdiction over those claims, and we agree with the district court that the claims for those years must fail."); WRIGHT, CHARLES ALAN & KOCH, JR., CHARLES H., 33 *Federal Practice & Procedure*, Judicial Review § 8398 (1st ed.) (2011) (discussing administrative exhaustion as a corollary to the doctrine of ripeness).

[8] The courts have recognized only three narrow exceptions to the exhaustion requirement of §1415(f):

(1) when the administrative process would have been futile;

36 (4th Cir.2002). As to the exceptions Plaintiff argues here, if the Plaintiff can show that undertaking the administrative procedures necessary to accomplish exhaustion would work a *severe harm* on Plaintiff, or would be *futile*, then the exhaustion requirement may be excused, and jurisdiction may be entertained. *See* MM, 303 F.3d at 536.

After hearing the evidence and weighing the credibility of the witnesses, the Court finds that Plaintiff has failed to establish an exception to the exhaustion requirement. As a result, Plaintiff has not met his burden of showing that the Court has subject matter jurisdiction. *See* Adams, 697 F.2d at 1219; Arbaugh v. Y & H Corp., 546 U.S. 500, 506-07 (2006).

**A. Severe Harm**

The 2010-11 school year is now over. As Plaintiff recognized at the hearing, the alleged harm which Plaintiff cites, namely the separation of the service dog from A.S. during school hours, will not come into play again until the next school year begins Fall 2011. Thus, if this case were dismissed for lack of subject matter jurisdiction at this time, A.S. and the service dog, Chatam, would not be separated again by school hours for some four weeks. During that time, the Plaintiff could pursue administrative remedies under IDEA if still aggrieved, and could then return to this Court on claims made in the instant action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (2006) and Title II of the Americans with Disabilities Acts,("ADA") 42 U.S.C. § 12132, *et seq.* (2006). Defendant asserts:

---

(2) when a school board failed to give parents proper notification of their administrative rights; or
(3) when administrative exhaustion would have worked severe harm upon a disabled child."

MM v. School District of Greenville County, 303 F.3d 523, 535-36 (4th Cir.2002).

9

> If Plaintiff were to pursue the available administrative review, he would be offered a resolution session with the school district within fifteen days of providing notice of a due process hearing request. 34 C.F.R. §300.510(a). He would have a hearing and a final decision within forty-five days after the resolution period ended. 34 C.F.R. §300.515(a). If there were an appeal to an impartial review officer, that decision would be made within thirty days after the request for review. 34 C.F.R. §300.515(b).

(Def.'s Reply at 6); See also N.C. Gen. Stat. §§115C-109.6 and 109.9. In addition, once school resumes, an abbreviated school day remains an option for A.S. Under these circumstances, the contemplated harm is not likely to take on serious proportions before exhaustion might be accomplished, and the Plaintiff cannot be said to have established severe hardship as an exception.

The Plaintiff argues hardship in that according to Plaintiff the all important relationship between A.S. and Chatam, established during lengthy training, would be doomed if the dog continues to be excluded from the Plaintiff's presence during school hours commencing with the next school year. The Plaintiff argues that the service dog's presence for A.S. is the only treatment which worked to ameliorate the child's disability, at least in his home environment, in particular to address the problem of his repeated "meltdowns."[9] It may be that the effectiveness of Chatam as a service dog for Plaintiff's neurological problems would tend to be degraded by the absence of the dog during school hours. It is, however, on the showing before the Court, insufficient as a claim of hardship. In particular, it is insufficient to overcome the evidence supporting the very successful educational program put into place thus far for A.S. The latter has

---

[9] A.S.'s mother describes his "melt downs" as "a cluster of self-injurious and aggressive behaviors that are very difficult to redirect, such as banging his head against the floor and other hard objects, biting himself and his clothing, drooling, and pulling his own hair as hard as possible." (Jennifer S. Decl. ¶3)

resulted in his marked progress educationally and socially by way of the current Individualized Education Plan ("IEP") put into place under the IDEA.

Plaintiff contends that the neurological problems of A.S. are involuntary and result from sensory overload as contrasted with behavioral issues manageable by educational and socialization processes. Plaintiff contends that a service dog is uniquely able to address such a disability, and that as such the denied need for A. S. to be accommodated by the animal not only constitutes a severe harm for purposes of the exception, but also takes the case out of the realm of IDEA altogether such that the need to establish an exception to exhaustion is not even invoked. The evidence is conflicting as to how one might properly characterize the four year old's "meltdown" eruptions. But it unequivocally indicates that Plaintiff's day-to-day crises, including such meltdowns, are subject to successful management by techniques currently applied in the school setting. The evidence further shows that A. S. made progress in a number of areas during the 2010-2011 academic year. The teacher assessment prepared by Ms. Aldridge included a finding that she is hopeful A.S. might serve as a leader towards younger special needs pupils in coming sessions of school.

The problem of the dog's likely estrangement from A. S. is said to grow out of an increased attachment between A.S.'s Mother and Chatham, and the resultant degradation of the relationship between A. S. and Chatham, due to the mother's presence with the dog at home during school hours. Plaintiff's expert testified that the research is conflicting in this area. Moreover, Plaintiff offered no evidence tending to show that accretive bonding with the mother might not be interrupted by objective measures. In addition, the evidence involving the setting outside the school is complicated by the presence of some five other siblings living in the home.

11

The effect on the dog of potential associated distractions was not explored.

In sum, Plaintiff has not persuaded this Court that the alleged harm is so severe as to excuse Plaintiff from administrative exhaustion.

**B. Futility**

Plaintiff also appears to advance a futility argument. According to Plaintiff, seeking administrative exhaustion will only result in the Office of Administrative Hearings ("OAH") deciding that it is unable to decide matters of discrimination. In other words, Plaintiff argues that a claim brought under the ADA or Section 504 is not cognizable under the IDEA.

Plaintiff cites two cases out of California in support. Neither is persuasive, however, because both fail to adequately address how a litigant escapes the *express mention* of claims brought under the ADA and Section 504 as falling within §1415(l), IDEA's exhaustion provision. In Sullivan v. Vallejo City Unified School District, plaintiff alleged violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, California Civil Code §§51 (California civil rights statute) and 54.1 and 54.2, as well as claims for intentional and negligent infliction of emotional distress. *See* Sullivan v. Vallejo City Unified School District, 731 F.Supp. 947 (E.D.Ca. 1990). The Sullivan trial court stated that "[p]roperly construed, plaintiff's claim is that whether or not the service dog is educationally necessary, defendants have discriminated against her on the basis of her handicap by arbitrarily refusing her access if she is accompanied by her service dog." Sullivan, 731 F.Supp. at 951. The court then opined that the primary issue in a Section 504 action is "whether defendants are capable of accommodating plaintiff's choice to use a service dog." Sullivan, 731 F.Supp. at 951. As a result, the court held that the plaintiff was *not* seeking relief available to her under the EHA[IDEA] and was, therefore,

12

*not* required to exhaust administrative remedies prior to seeking relief in federal court. Id. at 951. While Plaintiff cites C.C. v. Cypress School District, the case is not determinative of the exhaustion question raised here in that exhaustion was accomplished *before* issuance of the favorable merits decision on the plaintiff's motion for preliminary injunction. See C.C. v. Cypress Sch. Dist., Case No. 8:11CV352-AG (C.D.Cal. June 2011). Neither Sullivan or C.C. is persuasive, however, because both fail to adequately address how a litigant escapes the *express mention* of claims brought under the ADA and Section 504 within §1415(l), IDEA's exhaustion provision.

Likewise, Plaintiff's Supplemental filing does not alter the Court's analysis. The U.S. Department of Justice ("DOJ") Statement of Interest filed in connection with the C.C. v. Cypress School District case is instructive in that it informs regarding the nature of the rights protected by the IDEA, Section 504, and the ADA. "Title II of the ADA was enacted to broaden the coverage of Section 504" and that "coverage broadly includes the countless programs, services, and activities of public schools and state and local education departments and agencies." (DOJ Statement of Interest at 8 n.5) (*internal citations omitted*).

Of the three statutory schemes, the ADA speaks most directly to the use of service animals by individuals with disabilities. Under the ADA, a service dog is defined as "any dog individually trained to do work or perform tasks for the benefit of an individual with a disability." 28 C.F.R. § 35.104. "The work or task performed by a service animal must be directly related to the individual's disability." Id. "Work" includes "helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors" but does not include "the provision of emotional support, well-being, comfort, or

13

companionship." Id.

The DOJ "has long explained that the use of a service dog is reasonable, subject to certain considerations."[10] (DOJ Statement of Interest at 10). According to the DOJ, the decision ***turns on whether the public entity can demonstrate that making the modification would "fundamentally alter the nature of the service, program, or activity***." (DOJ Statement of Interest at 10) With respect to "educational necessity," the DOJ opines that Title II regulation does not permit public entities to require that the use of a service animal be in the best interests, or "educational necessity," of persons with disabilities as a precondition for the service animal to be used." (DOJ Statement of Interest at 11). The DOJ ultimately asserts that:

> The Title II [ADA] and Section 504-based civil right to use a service animal cannot be subject to school administrator discretion or veto. Otherwise, the plain language of the Title II regulatory mandate and its processes would be rendered hollow. A school district can meet its FAPE obligations under the IDEA, but still not comply with the processes and rights set out in Title VII and other parts of Section 504....

(Pl.'s Suppl. Resp. Exh. A / DOJ Statement of Interest at 19-20).

It is true that the DOJ's position is entitled to a certain amount of deference. *See e.g.*, Olmstead v. L.C., 527 U.S. 581, 597-98 (1999) ("The well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."); Auer v. Robbins, 519 U.S. 452, 461 (1977) (agency's interpretation of its regulations "controlling unless plainly erroneous or inconsistent with the regulation"). However, the DOJ Statement of Interest addresses the *merits* of the cause

---

[10] For example, "[a] public entity may ask an individual with a disability to remove a service animal from the premises if – (1) The animal is out of control and the animal's owner does not take effective action, or (2) if the animal is not housebroken." (DOJ Statement of Interest at 11).

of action – whether C.C. is entitled to access with use of his service animal, not whether exhaustion under Section 1415(l) is futile. Likewise, this Court does not read the DOJ's Statement of Interest as preclusive of a complementary action under IDEA, in which case exhaustion would still be necessary.

## V. Conclusion

There was necessarily much evidence adduced by both parties indicating that substantial efforts have been made to address the medical and educational issues present with A.S., both within the school setting and without, but a determination by this Court under a Section 504 or ADA analysis is simply inappropriate unless and until such time as those issues may be properly before the Court.

Defendant's Motion to Dismiss is hereby **GRANTED** and Plaintiff's claims are therefore **DISMISSED** *without prejudice*.

Signed: August 5, 2011

Richard L. Voorhees
United States District Judge